KING, C.J.,
 

 for the Court.
 

 ¶ 1. The Mississippi Department of Corrections (MDOC) terminated Parco Roland’s visitation privileges with Teresa Baskin, a former MDOC employee and Roland’s wife. Roland filed a lawsuit in the Circuit Court of Leflore County
 
 *973
 
 against several MDOC officials, alleging that they wrongfully denied his visitation with Baskin and requesting monetary and injunctive relief. The trial court summarily dismissed Roland’s complaint, finding that the MDOC was immune from liability and that Roland was being granted visitation in accordance with the MDOC’s visitation policy. Aggrieved, Roland appeals, raising four issues:
 

 I. Whether the trial court abused its discretion by dismissing Roland’s complaint sua sponte;
 

 II. Whether the trial court erred by dismissing Roland’s complaint on the ground that the defendants were immune from liability;
 

 III. Whether the trial court erred by finding that Roland was being granted visitation in accordance with the MDOC’s visitation policy; and
 

 IV. Whether Roland’s visitation with Baskin was denied arbitrarily and capriciously and without a legitimate interest.
 

 Finding error, we affirm in part and reverse and remand in part.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Roland was an inmate in the Kem-per-Neshoba Regional Correctional Facility (KNRCF). During his imprisonment, Roland established a relationship with Baskin, who was employed as a registered nurse at KNRCF. Baskin also established a relationship with Roland’s immediate family. On August 24, 2005, Baskin was terminated from her position and banned from visiting the facility because she violated an MDOC policy, which prohibited employees from establishing close relationships with offenders and their immediate family.
 

 ¶ 3. In November 2005, Roland was transferred to the Delta Correctional Facility (DCF). Somehow, Baskin was able to visit Roland during his imprisonment at DCF. DCF officials were later informed that Baskin was a former MDOC employee and that she had been banned from visiting Roland. Thus, in January 2006, DCF banned Baskin from visiting Roland based on the visitation ban initiated at KNRCF.
 

 ¶ 4. In February 2007, Roland and Bas-kin requested permission to get married, and they were allowed to wed while Roland was incarcerated. After marrying Roland, Baskin allegedly contacted Christopher Epps, the MDOC commissioner, regarding the visitation ban. Supposedly, Epps informed Baskin that the ban was extended to all MDOC facilities based on allegations that she was involved in extortion and introduced illegal contraband into the facility. Baskin denied involvement in any such activity.
 

 ¶ 5. Roland initiated a grievance with the MDOC’s Administrative Remedy Program, arguing that the visitation ban was arbitrary and capricious. On September 28, 2007, Roland received his third-step response in which the Administrative Remedy Program denied his request for relief, finding that the visitation ban was in accordance with the MDOC’s visitation policy. Roland did not appeal this decision.
 

 ¶ 6. Instead, on November 13, 2007, Roland filed a civil action against Epps; Ed Hargett, the warden at KNRCF; and Raymond Byrd, the warden at DCF, in their official capacities. Roland claimed that the MDOC officials violated his rights, and he was entitled to relief under the following:
 

 ... 42 U.S.C. § 1983, alleging discrimination, cruel and unusual punishment and deliberate indifference and denial of visitation for spouse in violation of the [Fjirst, Eighth, and [Fjourteenth Amendment to the United States Con
 
 *974
 
 stitution and article 3, sections 14, 24, 28, and 32 of the Mississippi Constitution.
 

 Roland requested that the trial court grant an injunction against the visitation ban, compensatory damages in the amount of $20,000, and punitive damages in the amount of $15,000.
 

 ¶ 7. By December 13, 2007, the MDOC had not filed a response to Roland’s claims. Yet, on this day, the trial court dismissed Roland’s lawsuit sua sponte, finding that the MDOC officials were immune from liability pursuant to the Mississippi Tort Claims Act. Also, in a cursory manner, the trial court found that Roland was being granted visitation in accordance with the MDOC’s visitation policy. However, a copy of the MDOC’s visitation policy was not before the trial court because it had not been filed in Roland’s case.
 

 ¶ 8. Aggrieved, Roland now appeals.
 

 ANALYSIS
 

 ¶ 9. On appeal, this Court reviews the trial court’s dismissal of a lawsuit based on a question of law under a de novo standard of review.
 
 Wimley v. Reid,
 
 991 So.2d 135, 136(¶ 5) (Miss.2008).
 

 I. Whether the trial court abused its discretion by dismissing Roland’s complaint sua sponte; and
 

 II. Whether the trial court erred by dismissing Roland’s complaint on the ground that the defendants were immune from liability.
 

 ¶ 10. Roland argues that the trial court erred by dismissing his lawsuit sua sponte, before the MDOC officials filed an answer to his complaint. Roland also argues that the trial court erred by finding that the MDOC officials were immune from liability under the Mississippi Tort Claims Act. Conversely, the State argues that the trial court did not err by dismissing Roland’s complaint because the MDOC officials were immune from liability pursuant to the Mississippi Tort Claims Act. The State also argues that it was clear that the visitation ban was not arbitrary and capricious.
 

 ¶ 11. The trial court dismissed Roland’s lawsuit sua sponte, finding that the MDOC officials were immune from liability pursuant to the Mississippi Tort Claims Act, Mississippi Code Annotated section 11^46-9(l)(m) (Supp.2008). Section 11-46-9(l)(m) states that:
 

 (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 

 [[Image here]]
 

 (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed....
 

 However, the supreme court has held that “the Mississippi Tort Claims Act applies only to tort suits for money damages.”
 
 Greyhound Welfare Found. v. Miss. State Univ.,
 
 736 So.2d 1048, 1049(¶5) (Miss.1999) (quoting
 
 Fordice v. Thomas,
 
 649 So.2d 835, 840 (Miss.1995) (superceded by statute)). In regard to Roland’s federal claims, this Court has found that defendants sued in their official capacity cannot be sued for monetary damages, but “a state official may be sued for injunctive relief in his or her official capacity under [section] 1983.”
 
 Suddith v. Univ. of S. Miss.,
 
 977 So.2d 1158, 1168 (¶¶ 12-13) (Miss.Ct.App.2007) (citing
 
 Will v. Mich. Dep’t of State Police,
 
 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).
 

 
 *975
 
 ¶ 12. Because the MDOC officials are immune from lawsuits seeking monetary damages, we find that the trial court properly dismissed Roland’s request for compensatory and punitive damages. However, we find that the trial court erred in its sua sponte dismissal of Roland’s request for injunctive relief as will be discussed under Issues III and IV.
 

 III. Whether the trial court erred by finding that Roland was being granted visitation in accordance with the MDOC’s visitation policy; and
 

 IV. Whether Roland’s visitation with Baskin was denied arbitrarily and capriciously and without a legitimate interest.
 

 ¶ 13. Roland argues that the visitation ban was arbitrary and capricious, violating several of his state and federally protected rights. Roland claims that Baskin was banned from visiting him based on allegations that she was involved in extortion and introducing illegal contraband into the facility. However, Roland and Baskin claim that there is no evidence of such. In addition, Baskin submitted an affidavit in which she attests that Hargett terminated her for accepting gifts from Roland’s family, not for having a relationship with Roland. Also, Roland claims that he and Baskin did not form a relationship until after Baskin was terminated from KNRCF.
 

 ¶ 14. Conversely, the State argues that the trial court did not err by dismissing Roland’s complaint sua sponte because the MDOC’s visitation policy prohibits visitation between inmates and former MDOC employees who met while the inmate was incarcerated. The State contends that the MDOC’s decision to ban Roland’s visitation with Baskin served a legitimate penological interest and, thus, was not arbitrary and capricious. The State asserts that Roland’s complaint was clear on its face that the visitation ban was not arbitrary and capricious; thus, the trial court’s dismissal of Roland’s complaint should be affirmed.
 

 ¶ 15. In
 
 Hentz v. Mississippi Department of Corrections,
 
 766 So.2d 1, 2(¶ 9) (Miss.Ct.App.1999), this Court held that:
 

 Visitation privileges are a matter subject to the discretion of prison officials. Although prisoners do not enjoy an absolute constitutional right to unrestricted visitation, and their visitation privileges are subject to the discretion of prison officials, restrictions on an inmate’s visitation privileges should not be imposed arbitrarily or discriminatorily.
 

 (Internal citations and quotations omitted). Thus, any limitations placed on an inmate’s visitation must serve a legitimate penological interest.
 
 See Puckett v. Stuckey,
 
 633 So.2d 978, 980-81 (Miss.1993).
 

 ¶ 16. The trial court dismissed Roland’s complaint sua sponte, before the MDOC filed a response to Roland’s allegations. In its order dismissing Roland’s complaint, the trial court cursorily found that Roland was being granted visitation in accordance with the MDOC’s visitation policy. It is important to note that Roland never filed a copy of the MDOC’s visitation policy with his complaint, and the record below is void of any such evidence. Because the record before the trial court is void of any evidence to substantiate the trial court’s finding, we fail to discern how the trial court made such a determination. Also, the State’s argument—that it was clear that the MDOC’s decision to ban Baskin’s visitation with Roland was not arbitrary and capricious—must fail.
 

 ¶ 17. There is a lack of evidence in the record: (1) to establish the MDOC’s visitation policy regarding visitation between an inmate and a former MDOC employee,
 
 *976
 
 who is now the inmate’s spouse, and (2) to determine whether that policy was fairly applied to Roland. We do not address the validity of Roland’s claims. However, Roland is entitled to have his day in court. Therefore, we reverse the trial court’s dismissal of Roland’s request for injunctive relief and remand this case to the trial court for further proceedings consistent with this opinion.
 

 CONCLUSION
 

 ¶ 18. Because the MDOC officials are immune from lawsuits seeking monetary damages, we find that the trial court properly dismissed Roland’s request for compensatory and punitive damages. Thus, this issue is affirmed on appeal. However, we find that the trial court did err by dismissing Roland’s claim for injunctive relief. Thus, we reverse and remand this issue to the trial court for further proceedings consistent with this opinion.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY DISMISSING ROLAND’S LAWSUIT FOR COMPENSATORY AND PUNITIVE DAMAGES IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY DISMISSING ROLAND’S LAWSUIT FOR INJUNCTIVE RELIEF IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.